**June H. STEPHENS, Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

No. 15667–2.

United States District Court
W. D. Missouri, W. D.

Oct. 8, 1965.

June H. Stephens, per se.

Clifford M. Spottsville, Asst. U. S. Atty., for respondent.

COLLINSON, District Judge.

Petitioner filed this action on September 9, 1965, and denominated it "A Petition For a Writ of Habeas Corpus Ad Subjiciendum, Ad Faciendum, Et Recipiendum." The Court treated it as a petition for writ of habeas corpus against the Warden of the U. S. Medical Center, Springfield, Missouri, where petitioner is presently confined, and issued a show cause order directed to respondent. Accompanying the petition was a motion for an order restraining the Attorney General's office from transferring the petitioner out of this judicial district until he has a hearing on his application for a writ.

Before the return was filed the petitioner filed for an emergency hearing on his motion for restraining order, alleging that he feared immediate removal from this judicial district. The return in this case simply challenges the sufficiency of the allegations of the petition to justify the issuance of a writ.

For the purpose of this opinion, all of petitioner's allegations will be treated as true; and, indeed, they are so well documented that there is no reason to doubt the veracity of any of the facts alleged. Petitioner is to be complimented on both the form and accuracy of his petition and the legal-like manner in which he has addressed his entire pleading to the sole legal question involved.

Petitioner received a sentence of twenty-five years on October 1, 1953, in the United States District Court for the Western District of Oklahoma, upon a plea of guilty. On October 31, 1956, he filed a "Motion in the Nature of a Writ of Error Coram Nobis" in that court, which was treated as a procedure under § 2255, and was denied.

This judgment was affirmed by the Tenth Circuit Court of Appeals on July 1, 1957, and is reported at 246 F.2d 607. Thereafter, petitioner filed a second § 2255 motion, and again appealed the adverse ruling of the court to the Tenth Circuit Court of Appeals, which affirmed the lower court on January 26, 1965 (341 F.2d 100). The petitioner was represented on this appeal by an attorney appointed by the Tenth Circuit Court, and at the time this judgment was entered petitioner was confined at Atlanta. The petitioner promptly sought to have this decision reviewed by the U. S. Supreme Court by an application for writ of certiorari, and it was here that his troubles began, which are the subject of his claim in the instant case that he has been deprived of his constitutional rights.

First, by a letter to the clerk, he requested the Tenth Circuit Court of Appeals to re-appoint the attorney who had represented him in that court to prepare and file his application for writ of certiorari, but that attorney informed petitioner that he was not admitted to practice before the U. S. Supreme Court. Petitioner then filed a motion with the

clerk of the Tenth Circuit Court of Appeals requesting that another attorney be appointed to apply for certiorari, but the clerk returned that motion and advised petitioner to submit it to the Supreme Court. Petitioner followed this advice, but was advised by that clerk that it was not the policy of the U. S. Supreme Court to appoint counsel for the preparation of an application for writ of certiorari, and that the matter of counsel would be considered after the application had been received. Petitioner's motion was again returned to him.

Petitioner then attempted to prepare and file his own application. He alleges that this had to be done in longhand, because prisoners were not allowed to use typewriters in the penitentiary at Atlanta, and that the material he prepared was placed on a "waiting list" to be typed for him. Petitioner alleges that it took from two to five weeks to have papers typed in this fashion, and that he, therefore, applied to the Supreme Court for an extension of time to file his application. On April 26, 1965, Justice White extended the time for filing the application for a writ until June 25, 1965.

Apparently this extension would have been sufficient, except that in the middle of May petitioner was advised he was being transported to the Springfield, Missouri, Medical Center for an operation. Under the Bureau of Prison rules, all his personal papers, including this application for writ of certiorari, which was only partially typed, were packaged and sealed and placed in the custody of a transportation officer of the Department of Justice. Petitioner promptly, on May 17, 1965, the date he left Atlanta in custody, wrote the clerk of the Supreme Court stating these facts, and stating further that such a trip took four to six weeks; that he would have no access to any of his papers during that period of time; and asked for a further extension of time. The clerk answered him by letter of May 20, stating that the extension by Mr. Justice White was the maximum extension allowed, and that no further extension of time could be granted.

Petitioner's estimate proved fairly accurate, in that he did not arrive at the Medical Center at Springfield, Missouri, until June 16, 1965. During this period he was kept in various federal institutions, for as long as eighteen days in one place, and he alleges that he made a number of appeals to the officials to allow him to have his personal papers in order to complete his application for writ of certiorari, but was denied in each instance because he was in "transport status." He wrote the clerk of the Supreme Court while in "transport," and again as soon as he arrived at the Medical Center, explaining that the actions of the Government had prevented him from completing and filing his application for writ. In reply to each letter he was advised that "no matter what the circumstances may be" there was no authority for any additional extension of time.

There is no allegation in the petition that thereafter petitioner attempted to file an application in the Supreme Court for writ of certiorari, and the petition is so fully documented and so complete that the Court feels it can safely assume that no such attempt was made.

The petitioner now argues most forcefully, in a written argument attached to this petition, that his fundamental constitutional rights have been violated, and that he has been deprived by agents of the U. S. Government of his right to apply for relief to the highest court of the land. He cites several cases of that court, well known to the Bar, that one of his fundamental rights is to be represented by counsel at every stage of his proceedings, and he argues that this § 2255 proceeding was most important to him, and that he has not only been deprived of his right to counsel in what he considers the most important state of the proceedings, but has also been deprived, by actions of agents of the Government, to even file his application for writ of certiorari.

The petitioner frankly states that the transfer to the U. S. Medical Center was for his own best interest for his personal health. He further candidly ad-

mits that there is probably a very good reason for the sealing of a prisoner's personal papers while he is in "transport." He does not claim that any of these actions were done maliciously or intentionally to deprive him of his right to file his application; and does not even complain of the thirty days that he was en route from Atlanta, Georgia, to Springfield, Missouri. But he does state in a most legal-like manner that the question is not whether there is any merit in his application for a writ, and not whether the Court would have issued the writ, but whether a prisoner can be deprived of his right to apply for such a writ while in custody.

This Court is not going to go into the troublesome question of whether failure to furnish counsel to an indigent petitioner in a § 2255 proceeding violates petitioner's constitutional rights, because the Court feels that the petitioner has misconceived his remedy by applying for habeas corpus. He has two possible procedures which he could follow to present the questions he has raised. His actual complaint is that he has been deprived of his right to review in the U. S. Supreme Court this decision of the Tenth Circuit Court of Appeals in January, 1965. An application for writ of certiorari filed directly with the Supreme Court at this time, accompanied by the reasons for the delay in filing, can very possibly secure him this desired result. If not, there is no reason why the petitioner cannot reach the Supreme Court by again filing the § 2255 motion in the Western District of Oklahoma and then following the orderly process of appeal and application for writ of certiorari. Petitioner states frankly in his written brief that he is more than satisfied with the counsel who was appointed for him in his last appearance before the Tenth Circuit Court of Appeals, and there is no reason to believe that he would not have the benefit of counsel again. Petitioner has exhibited considerable ability at both drafting pleadings and legal analysis in his application for a writ, and could have his application for certiorari prepared in an-

ticipation of an identical ruling by the Tenth Circuit.

For the above stated reasons, petitioner's application for writ of habeas corpus is denied; the application for restraining order is denied; and this cause is dismissed.